## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JOHN DOE,

          Plaintiff,

v.

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

          Defendant.

C.A. No. 1:21-cv-12060

## DEFENDANT'S ANSWER

Defendant Massachusetts Institute of Technology ("MIT," the "Institute," or the "Defendant") answers the Complaint of Plaintiff John Doe ("Plaintiff"), stating as follows:

1.      MIT admits that the Institute expelled Plaintiff in 2016 after he was found responsible for engaging in harassment and sexual misconduct in violation of MIT's policies. MIT admits that Plaintiff has brought an action against MIT but denies that Plaintiff has asserted any viable claim against MIT.  MIT denies the remaining allegations in paragraph 1.

2.      MIT admits that on January 26, 2016, Jane Roe submitted a complaint (the "Complaint") to MIT's Title IX Office regarding, among other things, an interaction with Plaintiff on February 27, 2015 that she described as rape and sexual assault.  The Complaint is a writing that speaks for itself, and any characterizations thereof are denied.  MIT denies the remaining allegations in paragraph 2.

3.      MIT admits that investigators from the Institute's Title IX Office investigated the Complaint, which included interviews of Plaintiff, Jane Roe, and other students, as well as the review of various documents (the "Investigation").  MIT further admits that at the conclusion of

the Investigation, the Investigator prepared an investigation report (the "Investigation Report") that included recommended findings that Plaintiff had violated policies in MIT's *Mind and Hand Book*, namely Nonconsensual sexual contact (2014-2015 edition), Nonconsensual sexual penetration (2014-2015 edition), and Harassment (2013/2014 edition) (hereafter collectively, the "Policies").  MIT denies the remaining allegations in paragraph 3.

4.      MIT admits that on April 25, 2016, at Plaintiff's request, MIT held a hearing before a three-member panel of the COD (the "COD Hearing"), and that Plaintiff denied responsibility for violating the Policies.  MIT further admits that after the COD Hearing, the Chair of the COD sent a letter to Plaintiff on April 27, 2016, informing him that the COD had found him responsible for violating the Institute's policies regarding (1) nonconsensual sexual contact and nonconsensual sexual penetration (digital, oral, and vaginal) arising from interactions with Jane Roe on February 27, 2015,  and (2) engaging in a course of conduct during a dating relationship with Jane Doe in 2013 and 2014 that constituted harassment in violation of MIT's policy (the "COD Decision").  MIT admits that based on the evidence and information reviewed by the COD, the COD sanctioned Plaintiff with expulsion.   MIT denies the remaining allegations in paragraph 4.

5.      MIT admits that Plaintiff appealed the COD Decision to MIT's former chancellor Cynthia Barnhart (the "Chancellor") and argued that the evidence did not support the COD's finding and that the sanction of expulsion was "extreme."  MIT admits that on May 13, 2016, the Chancellor sent a letter to Plaintiff affirming the COD Decision, and stating, among other things, that the COD's finding was not substantially against the weight of the evidence and that expulsion was within the range of permissible sanctions.  MIT further admits that Plaintiff was expelled from MIT.  MIT denies the remaining allegations in paragraph 5.

- 2 -

6.      MIT is without sufficient information or knowledge as to the allegations in the first sentence of paragraph 6 and therefore those allegations are denied.  MIT admits that before the issuance of COD Decision, Plaintiff did not have a record of discipline at MIT.  MIT denies the remaining allegations in paragraph 6.

7.      Admitted.

8.      MIT admits that it is a "citizen" of the Commonwealth of Massachusetts for purposes of diversity jurisdiction.  MIT is without sufficient information or knowledge as to the allegations of Plaintiff's citizenship and therefore that allegation is denied.  The remaining allegations in paragraph 8 state conclusions of law to which no responsive pleading is required and are therefore denied.

9.      MIT admits only that the Institute is located in the Commonwealth of Massachusetts and that events which are the subject of this action took place in the Commonwealth of Massachusetts.  The remaining allegations in paragraph 9 state conclusions of law to which no responsive pleading is required and are therefore denied.

10.     MIT admits that events or omissions giving rise to this action occurred in the District of Massachusetts.  The remaining allegations in paragraph 10 state conclusions of law to which no responsive pleading is required and are therefore denied.

11.     MIT admits that the conduct alleged in the Complaint arising from an interaction between Plaintiff and Jane Roe on February 27, 2015 was subject to the Sexual Misconduct Policy set forth in the 2014-2015 edition of MIT's Mind and Hand Book (the "2014-2015 Mind and Hand Book"), and that the conduct alleged in the Complaint concerning interactions between Plaintiff and Jane Roe during the 2013-2014 school year was subject to the Harassment Policy set for the in the 2013-2014 edition of MIT's Mind and Hand Book (the "2013-2014 Mind and

Hand Book").  MIT admits that the 2013-2014 Mind and Hand Book and 2014-2015 Mind and

Hand Book were issued by MIT's Division of Student Life and that both state that they "contain

standards, guidelines, regulations, and procedures regarding general behavior and policies for all

undergraduate and graduate students, including those residing in Institute-approved housing and

living groups."  MIT admits that the Institute's motto is "Mens et manus," which is Latin for

Mind and Hand.  MIT denies any remaining allegations in paragraph 11.

12.     MIT admits that the quoted language appears in the 2014-2015 Mind and Hand

Book in Section II (23)—not Section II (22)—of the Policies Regarding Student Behavior.  MIT

denies any remaining allegations in paragraph 12.

13.     MIT admits that the 2014-2015 Mind and Hand Book states as follows:

MIT students are expected to engage in sexual behavior of any kind only with the fully
informed and *effective consent* of all parties involved.  *Effective consent* must be obtained
for each instance and each escalation of sexual activity.  Obtaining *effective consent* is the
responsibility of the party initiating sexual activity. Doing otherwise may constitute
sexual misconduct and is a violation of MIT policy.  (Italics in original.)

MIT further admits that 2014-2015 Mind and Hand Book goes on to states as follows:

<u>Effective Consent</u> is:

- informed;
- freely and actively given;
- mutually understandable words or actions;
- which indicate a willingness to participate in
- mutually agreed upon sexual activity.

Further:

- Initiators of sexual activity are responsible for obtaining *effective consent*.
- Silence or passivity is not *effective consent*.
- The use of intimidation, coercion, threats, force, or violence negates any consent
  obtained.
- Consent is not effective if obtained from an individual who is incapable of giving
  consent due to one or more of the following or other reasons:
- a mental, intellectual, or physical disability; or

- is under the legal age to give consent; or is asleep, unconscious, or physically helpless; or
- is *incapacitated* by alcohol or other drugs.
- Consent to one type of sexual activity does not imply consent to any other or all types of sexual activity.
- A person can withdraw consent at any time.
- Consent to sexual activity at one time does not imply consent to the same or other sexual activity at any other time.
- Refusal, lack of consent, or non-consent may be expressed in many ways, verbally or physically. Physical resistance is not necessary to communicate a lack of consent.  It is not necessary to resist physically or express verbally to indicate a lack of consent.  It is the responsibility of the initiator of the sexual activity to obtain *effective consent*.

Individuals who initiate sexual activity assume responsibility for their behavior and must understand that the use of alcohol or other drugs does not reduce accountability for their actions.  The question is whether or not the person who initiated the sexual activity knew or whether a sober and reasonable person in the same position should have known whether the other person gave *effective consent*.  (Italics and underscoring in original.)

MIT denies any remaining allegations in paragraph 13.

14.     MIT denies that this language appears in the 2014-2015 Mind and Hand Book.

15.     MIT admits that Section II (23)—not Section II (22)—of the Policies Regarding Student Behavior in the 2014-2015 Mind and Hand Book includes these definitions of "Nonconsensual sexual conduct" and "Nonconsensual sexual penetration," except that (1) the terms "Nonconsensual sexual conduct" and "Nonconsensual sexual penetration" are underscored, and (2) the terms "effective consent" and "incapacitation" appear in italics.  MIT denies any remaining allegations in paragraph 15.

16.     MIT admits that Section II (23)—not Section II(22)—of the Policies Regarding Student Behavior in the 2014-2015 Mind and Hand Book includes these definitions of "Nonconsensual sexual conduct" and "Nonconsensual sexual penetration," except that (1) the phrases "Sexual Harassment," "Examples of verbal sexual harassment," and "Examples of nonverbal sexual harassment" are underscored; (2) the terms "nonconsensual sexual contact,"

"sexual exploitation," and "nonconsensual sexual penetration" appear in italics; and (3) there is

no ellipsis after the phrase "creating a hostile working, academic, or living environment."  MIT

denies any remaining allegations in paragraph 16.

17.     MIT admits that the quoted language appears in the 2014-2015 Mind and Hand

Book in Section II (23)—not Section II (22)—of the Policies Regarding Student Behavior.  MIT

denies any remaining allegations in paragraph 17.

18.     MIT admits that the 2014-2015 Mind and Hand Book states:

Anyone—including individual students, faculty members, and employees of the
Institute—may bring a formal complaint against a student to the Committee on Discipline
(COD). The COD reviews cases of academic offenses, violations of Institute regulations
and standards, and other infractions alleged to have been committed by students.

A formal complaint against a student must be submitted in writing to OSC. The charge
and its documentation are transmitted to the chair of the COD. After a review of the
documentation, the chair will decide whether or not a hearing by the COD is warranted,
and, if so, what the appropriate forum will be. The COD has the authority to impose any
sanction it deems appropriate.  Possible sanctions include placing a letter in a student's
disciplinary file, probation, suspension, and expulsion.  Sanctions may also include
educational and/or restorative components meant to address the wrongdoing and serve
the larger community.  Detailed procedures for resolving complaints alleging that a
student has violated MIT policies are available from the OSC and from the COD.

MIT denies any remaining allegations in paragraph 18.

19.     MIT denies that Plaintiff has correctly quoted the language as it appears in the

2014-2015 Mind and Hand Book. Further answering, MIT states that Section II of the 2014-2015

Mind and Hand Book, titled "Resources, Committee on Discipline," states:

The Institute's mission encourages students to explore in order to advance knowledge at
the highest level. It also expects its students to uphold the highest standards of respect,
integrity, and civility.  With this context, the Committee on Discipline (COD) was
created to resolve complaints of alleged violations of policies and/or community
standards by a student or former student in a way that is objective and educational, not
legalistic or adversarial.  The Rules and Regulations of the Faculty provide for the
creation of a Committee on Discipline.  The COD acts with power to hear cases and to

decide the appropriate Institute response, including, but not limited to, suspension, expulsion, and revocation of degree.

The Institute reserves the right to take any action that it deems as necessary or appropriate to protect the intellectual integrity, safety, and wellbeing of the campus community. To that end, MIT students are expected to abide by the rules, regulations, and policies of the Institute, as well as city, state, and federal laws.

The Rules and Regulations of the COD govern how cases of alleged misconduct by student shall be resolved. The rules are available online at http://cod.mit.edu and in print from the Office of Student Citizenship, W20-507, 617-253-3276, citizenship@mit.edu.

20.     MIT admits that the quoted language appears in the 2014-2015 Mind and Hand Book in Section II (18) of the Policies Regarding Student Behavior in the section entitled "Nondiscrimination Policy," but denies that the language appears in the section entitled "Sexual Misconduct." MIT denies any remaining allegations in paragraph 20.

21.     MIT admits that it receives federal funds. The remaining allegations in paragraph 21 state conclusions of law to which no responsive pleading is required and are therefore denied. Further answering, MIT states that the allegations regarding Title IX are irrelevant because Plaintiff does not and cannot assert a claim under that statute.

22.     MIT admits only that on April 4, 2011, the Office for Civil Rights ("OCR") issued a "Dear Colleague" letter (the "2011 Letter") and that the letter was later revoked. MIT denies that the 2011 Letter provides "necessary set of background facts to this action." The allegation that the 2011 Letter was "in effect" is a conclusion of law to which no responsive pleading is required and is therefore denied. MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 22 and therefore those allegations are denied.

23.     The 2011 Letter is a writing that speaks for itself, and any characterizations thereof are denied. MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 23 and therefore those allegations are denied.

24.      MIT is without sufficient information or knowledge as to the allegations in paragraph 24 and therefore those allegations are denied.

25.      The 2011 Letter is a writing that speaks for itself, and any characterizations thereof are denied.  MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 25 and therefore those allegations are denied.

26.      MIT is without sufficient information or knowledge as to the allegations in paragraph 26 and therefore those allegations are denied.

27.      MIT is without sufficient information or knowledge as to the allegations in paragraph 27 and therefore those allegations are denied.

28.      The 2011 Letter is a writing that speaks for itself, and any characterizations thereof are denied.  MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 28 and therefore those allegations are denied.

29.      The Questions and Answers on Title IX and Sexual Violence (the "2014 Q&A") is a writing that speaks for itself, and any characterizations thereof are denied.  MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 29 and therefore those allegations are denied.

30.      The allegations in paragraph 30 regarding whether the 2011 Letter and the 2014 Q&A "constituted substantive decision-making" state conclusions of law to which no responsive pleading are required and are therefore denied.  MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 30 and therefore those allegations are denied.

31.      MIT is without sufficient information or knowledge as to the allegations in paragraph 31 and therefore those allegations are denied.

32.     MIT is without sufficient information or knowledge as to the allegations in paragraph 32 and therefore those allegations are denied.

33.     MIT is without sufficient information or knowledge as to the allegations in paragraph 33 and therefore those allegations are denied.

34.     MIT is without sufficient information or knowledge as to the allegations in paragraph 34 and therefore those allegations are denied.

35.     MIT admits only that on October 27, 2014, MIT's President issued a letter to the MIT community, which included a letter from the Chancellor with the subject line "Learning from our survey on sexual assault," and that Plaintiff has quoted a portion of that letter (the "October 2014 Letter").   MIT denies the remaining allegations in paragraph 35.

36.     MIT admits that the October 2014 Letter referenced a survey that was conducted to understand the extent and effects of sexual misconduct in the MIT community (the "Survey"). The October 2014 Letter and the Survey are writings that speak for themselves, and any characterizations thereof are denied.  MIT denies the remaining allegations in paragraph 36.

37.     MIT denies the allegations in the first sentence of paragraph 37.  MIT admits that the Chancellor and the Institute fully supported efforts to understand the extent and effects of sexual misconduct on MIT's campus and to prevent its occurrence.  MIT denies any remaining allegations in paragraph 37.

38.     MIT is without sufficient information or knowledge as to the allegations in paragraph 38 and therefore those allegations are denied.

39.     MIT is without sufficient information or knowledge as to the allegations in paragraph 39 and therefore those allegations are denied.  Further answering, MIT states that

these allegations, which purport to address unrelated events occurring more than a year after Plaintiff's expulsion, are irrelevant to this matter.

40.      MIT is without sufficient information or knowledge as to the allegations in paragraph 40 and therefore those allegations are denied.  Further answering, MIT states that these allegations, which purport to address unrelated events occurring more than a year after Plaintiff's expulsion, are irrelevant to this matter.

41.      MIT states that the allegation about "Obama era procedures" is too vague and ambiguous to permit a response.  The allegation that the 2011 Letter was "in effect" during the "2013-2016 time period" is a conclusion of law to which no responsive pleading is required and is therefore denied.  MIT is without sufficient information or knowledge as to the remaining allegations in paragraph 41 and therefore those allegations are denied.  Further answering, MIT states that these allegations, which purport to address unrelated events more than four years after Plaintiff's expulsion, are irrelevant to this matter.

42.      MIT is without sufficient information or knowledge as to the allegations in paragraph 42 and therefore those allegations are denied.

43.      MIT is without sufficient information or knowledge as to the allegations in paragraph 43 and therefore those allegations are denied.

44.      MIT is without sufficient information or knowledge as to the allegations in paragraph 44 and therefore those allegations are denied.

45.      MIT is without sufficient information or knowledge as to the allegations in paragraph 45 and therefore those allegations are denied.

46.      MIT is without sufficient information or knowledge as to the allegations in paragraph 46 and therefore those allegations are denied.

47.     MIT admits that Jane Roe filed the Complaint in January 2016.  MIT is without

sufficient information or knowledge as to the remaining allegations in paragraph 47 and

therefore those allegations are denied.

48.     MIT admits that on January 26, 2016, Jane Roe filed the Complaint with MIT's

Title IX Office arising, in part, from alleged interactions with Plaintiff on February 27, 2015.

The Complaint is a writing that speaks for itself, and any characterizations thereof are denied.

49.     MIT admits that two investigators from MIT's Title IX Office investigated the

Complaint, which included interviews of Plaintiff, Jane Roe, and other students, as well as the

review of various documents.  MIT admits that the investigators were women but denies that

they "expressed radical feminist attitudes."  MIT admits that before working at MIT, one of the

investigators worked as a victim advocate at The Women's Center in Virginia.  MIT denies any

remaining allegations in paragraph 49.

50.     MIT denies that a Title IX investigator advised Plaintiff not to hire an attorney or

ever told Plaintiff that that an attorney "would not be any help since they would be able to attend

or speak at the investigation meeting and would be a waste money."  Further answering, MIT

states that MIT's Title IX Coordinator informed Plaintiff, in writing, that he was "entitled to an

advisor of [his] choice who may accompany [him] to any meetings, interviews or related

proceedings" (although the advisor could "not actively participate in such proceedings"), and

that MIT's Title IX Coordinator provided Plaintiff with a copy of MIT's Committee on

Discipline Rules and Regulations, which expressly informed Plaintiff that "attorneys are

permitted to serve as advisors to complainants and respondents in cases involving allegations of

sexual misconduct, intimate partner violence, or stalking."  MIT admits that after the Title IX

Coordinator met with Plaintiff, the Title IX Coordinator, at Plaintiff's request, provided him a

list of six MIT employees who had received training on the Institute's Title IX and Committee

on Discipline processes, and that Plaintiff then selected an advisor of his choice, who was an

Area Director in Residential Life.  MIT further admits that the investigators met with Plaintiff on

at least two occasions.  MIT denies the remaining allegations in paragraph 50.

      51.     Denied.

      52.     MIT admits only that the Investigation Report included recommended findings

that Plaintiff had violated the Policies.  MIT denies the remaining allegations in paragraph 52.

      53.     MIT admits that on April 25, 2016, MIT held a hearing before a three-member

panel of the COD which was composed of two women and one man, and that Plaintiff denied

responsibility for violating the Policies.  MIT further admits that after the COD Hearing, the

Chair of the COD sent the COD Decision to Plaintiff on April 27, 2016, informing him that the

COD had found him responsible for violating the Institute's policies regarding (1) nonconsensual

sexual contact and nonconsensual sexual penetration (digital, oral, and vaginal) arising from

interactions with Jane Roe on February 27, 2015, and (2) engaging in a course of conduct during

a dating relationship with Jane Doe in 2013 and 2014 that constituted harassment in violation of

MIT's policies.  MIT admits that based on the evidence and information reviewed by the COD,

the COD sanctioned Plaintiff with expulsion.  MIT denies the remaining allegations in paragraph

53.

      54.     With respect to the first sentence of paragraph 54, MIT admits that Plaintiff

appealed the COD Decision to Chancellor and argued that the evidence did not support the

COD's finding and that the sanction of expulsion was "extreme."  MIT is without sufficient

information or knowledge as to the allegations in the second sentence of paragraph 54 and

therefore those allegations are denied.  Regarding the third sentence of paragraph 54 and

extended block quotation, MIT admits only that Plaintiff has quoted portions of his appeal letter. MIT denies all remaining allegations in paragraph 54.

55.     MIT admits that on May 13, 2016, the Chancellor sent a letter to Plaintiff affirming the COD Decision, and stating, among other things, that the COD's finding was not substantially against the weight of the evidence and that expulsion was within the range of permissible sanctions.  MIT denies the remaining allegations in paragraph 55.

56.     MIT admits only that Plaintiff was expelled from MIT.  MIT denies the remaining allegations in paragraph 56.

57.     Denied.

58.     MIT denies that Plaintiff's expulsion was unwarranted.  MIT is without sufficient information or knowledge as to Plaintiff's speculation regarding his possible academic performance if he had not been expelled and therefore those allegations are denied.

59.     Denied.

60.     Denied.

61.     MIT admits that Plaintiff has brought an action against MIT but denies that Plaintiff has asserted any viable claim against MIT.  MIT denies the remaining allegations in paragraph 61.

<u>**FIRST CAUSE OF ACTION**</u>
**State Law Breach of Contract**

62.     MIT restates and incorporates by reference its responses to Paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63.     The allegations in paragraph 63 state conclusions of law to which no responsive pleading is required and are therefore denied.

64.      The allegations in paragraph 64 state conclusions of law to which no responsive pleading is required and are therefore denied.

65.      Denied.

66.      The Rules and Regulations of the COD is a writing that speaks for itself, and any characterizations thereof are denied.

67.      Denied.

68.      Denied.

69.      MIT admits that Plaintiff was found responsible for violating the Institute's policies regarding nonconsensual sexual contact and nonconsensual sexual penetration (digital, oral, and vaginal) arising from interactions with Jane Roe on February 27, 2015, and engaging in a course of conduct during a dating relationship with Jane Doe in 2013 and 2014 that constituted harassment in violation of MIT's policy.  MIT denies the remaining allegations in paragraph 69.

70.      Denied.

71.      Denied.

72.      Denied.

### SECOND CAUSE OF ACTION
**Promissory Estoppel**

73.      MIT restates and incorporates by reference its responses to Paragraphs 1 through 72 of the Complaint as if fully set forth herein.

74.      MIT's 2014-2015 Mind and Hand Book is a writing that speaks for itself, and any characterizations thereof are denied.  Any remaining allegations in paragraph 74 state conclusions of law to which no responsive pleading is required and are therefore denied.

75.      The allegations in paragraph 75 state conclusions of law to which no responsive pleading is required and are therefore denied.

76. MIT is without sufficient information or knowledge as to Plaintiff's purported state of mind and therefore that allegation is denied. MIT denies all remaining allegations in Paragraph 76.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

## THIRD CAUSE OF ACTION
### Breach of Contract/Common Law: Denial of
### Basic Fairness/Arbitrary and Capricious Decision-Making

81. MIT restates and incorporates by reference its responses to Paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82. The allegations in paragraph 82 state conclusions of law to which no responsive pleading is required and are therefore denied.

83. The allegations in paragraph 83 state conclusions of law to which no responsive pleading is required and are therefore denied.

84. The allegations in paragraph 84 state conclusions of law to which no responsive pleading is required and are therefore denied.

85. MIT's 2014-2015 Mind and Hand Book is a writing that speaks for itself, and any characterizations thereof are denied. Any remaining allegations in paragraph 85 state conclusions of law to which no responsive pleading is required and are therefore denied.

86. The allegations in paragraph 86 state conclusions of law to which no responsive pleading is required and are therefore denied.

87.     The allegations in paragraph 87 state conclusions of law to which no responsive pleading is required and are therefore denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Plaintiff's Appeal and MIT's 2014-2015 Mind and Hand Book are writings that speak for themselves, and any characterizations thereof are denied.  Any remaining allegations in paragraph 94 are denied.

94.     MIT admits that, in response to Plaintiff's Appeal, the Chancellor informed him on May 13, 2016, that she was affirming the COD Decision.  Any remaining allegations in paragraph 95 are denied.

95.     Denied.

96.     Denied.

97.     Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

To the extent that any cause of action is based on events occurring outside the applicable statute of limitations, the cause of action is time-barred.

## THIRD AFFIRMATIVE DEFENSE

MIT is a charitable corporation and any recovery by Plaintiff is limited by the provisions of G.L. c.231, §85K.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim for promissory estoppel fails because it is duplicative of the claim for breach of contract and the doctrine of promissory estoppel where Plaintiff purports to rely upon a written document as the basis for his claim for breach of contract.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim for breach of contract fails because Plaintiff cannot establish that MIT breached any reasonable expectation created by any applicable Mind and Hand Book or the Rules and Regulations of the Committee on Discipline.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail in their entirety because MIT always acted reasonably and in good faith, provided Plaintiff a process that afforded him basic fairness, and did not sanction Plaintiff arbitrarily and capriciously.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, must be reduced to the extent he failed to mitigate them.

## EIGHT AFFIRMATIVE DEFENSE

Plaintiff's claim for promissory estoppel, which is based on an equitable doctrine, is barred by Plaintiff's unclean hands and violations of MIT's policies.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's breach of MIT's policies bar his claims and/or requested relief.

### <u>TENTH AFFIRMATIVE DEFENSE</u>

Plaintiff is estopped from pursuing his claims and/or requested relief by reason of his own actions and course of conduct.

### <u>ELEVENTH AFFIRMATIVE DEFENSE</u>

The doctrine of laches bars Plaintiff's claims and/or requested relief.

WHEREFORE, Defendant Massachusetts Institute of Technology asks that this Court:

A.      Dismiss Plaintiff's claims with prejudice; and

B.      Award such relief as the Court deems just and proper.

### <u>JURY DEMAND</u>

Defendant demands a jury trial on all issues so triable.

Respectfully submitted,

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**

By its attorneys,


/s/ Scott A. Roberts
Scott A. Roberts (BBO #550732)
            *sroberts@hrwlawyers.com*
Hirsch Roberts Weinstein LLP
24 Federal Street, 12th Floor
Boston, MA  02110
Phone: (617) 348-4300
Fax: (617) 348-4343


Dated: December 13, 2022

## <u>CERTIFICATE OF SERVICE</u>

      I, Scott A. Roberts, certify that this document, filed through the Electronic Case Filing (ECF) system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 13, 2022.

                              /s/ Scott A. Roberts
                              Scott A. Roberts (BBO #550732)